UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL CASE NO. 15-67-WOB-CJS

TONYA MICHELLE GOSNELL                                                            PLAINTIFF

v.                         **REPORT AND RECOMMENDATION**

**CAROLYN W. COLVIN, Acting
Commissioner of Social Security**                                                  **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \*

Plaintiff Tonya Michelle Gosnell brings this action under 42 U.S.C. §§ 405(g), challenging Defendant Commissioner's final decision denying her application for benefits under Title II and Title XVI of the Social Security Act. (R. 2). This matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and therefore not entitled to benefits. After a thorough review of the administrative record, for the reasons explained below it will be **recommended** that Plaintiff's Motion for Summary Judgment (R. 12) be **denied**, and the Commissioner's Motion for Summary Judgment (R. 14) be **granted.**

I.      STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id*. (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id.* (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that she is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. §§ 423(a)(1), 1381 *et seq*. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Social Security Act requires the Commissioner to follow a five-step analysis when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that she is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)). Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate that she suffers from a severe impairment. *Id*. at 803-04. "A 'severe

impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id*. at 804 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. *Id*. (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). Fourth, if the impairment does not meet or equal a listed impairment, the claimant must show her impairment prevents her from doing her past relevant work. *Id*. Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work that exists in the national economy. *Id*. (citing *Abbott*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id*. (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's alleged disability began on August 15, 2009, when she was 34 years old. (Administrative Record (A.R.) 127-28). Plaintiff obtained her GED and completed a program to become certified in phlebotomy.[1] (*Id.* at 188, 379, 411, 717-19). Plaintiff has previous work experience as a tape assembler and medical assistant/phlebotomist. (*Id.* at 719-20). On her application, Plaintiff asserted the following conditions limit her ability to work: seizures, anxiety, depression, anorexia, lower back problems, and migraine headaches. (*Id.* at 187). Plaintiff also

---

[1]Plaintiff testified that her certification in phlebotomy has expired. (A.R. 718).

testified to taking Dexalong for stomach pains; Dilantin for seizures; Celexa for depression; Xanax for anxiety and Zyrtec for allergies. (*Id*. at 727-32).

Plaintiff testified at the hearing that her knee and back pain are the physical ailments that keep her from working. (A.R. 723). She takes ibuprofen as needed for her back pain. She testified that she used to have seizures, but has not had one in almost two years. She also had her gallbladder removed in 2011, and returns to her doctor regularly for follow-up. (A.R. 553-60; 715, 727). She also mentioned in the hearing that she was diagnosed with a hiatal hernia, and prescribed Dexalong. Plaintiff also explained that she suffers from depression and anxiety, stating "I feel like I'm going crazy." (*Id*. at 727). She explained she has nightmares; she does not like crowds; stays angry and has trouble getting along with others. (*Id*. 727-30). Plaintiff also testified that she has anxiety attacks two or three times a day, but she generally is able to use coping skills to calm herself. (*Id*. at 734-35).

On April 18, 2011, Plaintiff filed applications for disability insurance benefits and supplemental security income. (*Id.* at 125-28; 186-98). These claims were denied initially and again upon reconsideration. (*Id.* at 32-45, 95-101, 104-08). At Plaintiff's request, a hearing was held in front of Administrative Law Judge (ALJ) Donald Rising on September 10, 2013. (*Id*. at 714-40). Plaintiff appeared and testified at the hearing. (*Id.*). The ALJ also heard testimony from an impartial vocational expert (VE). (*Id.* at 736-40). After receiving testimony and reviewing the record, the ALJ issued a written decision on November 20, 2013, finding Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 16-27).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled. (*Id.* at 15-22). *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ determined that

4

Plaintiff had not engaged in substantial gainful employment since August 15, 2009–the alleged onset date of her disability.[2] (A.R. 18). At step two, the ALJ determined that Plaintiff had the severe impairments of: disorders of the back, discogenic and degenerative; seizure disorder; anxiety; and depression. (*Id.*).

At step three, the ALJ analyzed Plaintiff's impairments individually and in combination, and found that Plaintiff did not have an impairment that meets or equals the level of severity set forth in any of the Listing of Impairments under the applicable Federal Regulation, and he specifically referenced his consideration of Listings 12.04 and 12.06. (*Id.* at 23-24). At step four, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with the following additional limitations: "occasional public contact; simple instructions and tasks; brief learning periods; little independent judgment; minimal variation in routine; no climbing of ladders, ropes or scaffolds; no work around hazardous or dangerous machinery or settings; no exposure to heights." (*Id.* at 24-26). In reaching this RFC, the ALJ considered claimant's testimony, answers of Plaintiff's husband to a third-party questionnaire, the documentary evidence before him, and the medical opinion evidence. (*Id.*). After consideration of the complete record, the ALJ imposed limitations in the RFC that he found supported by the evidence. (*Id.*).

At the hearing, the ALJ heard testimony from an impartial VE who stated that, based on the RFC provided by the ALJ, Plaintiff could not perform her past relevant work. (*Id.* at 738). The VE testified, however, that given an individual of Plaintiff's age, education, work experience, and RFC

---

[2]The ALJ found Plaintiff met the insured status requirements of the Social Security Act through June 30, 2012. (A.R. at 18).

cited above, there are jobs at the medium, light and sedentary exertion levels that exist in significant numbers in the national economy that such an individual can perform. (*Id.*). The VE testified that representative occupations include: at the medium level, food prep worker and kitchen helper; at the light level, dishwasher and food prep worker; and at the sedentary level, packer, production worker and material handler. (*Id.* at 738-39). The ALJ adopted the VE's opinions, and concluded that Plaintiff was not "disabled" for social security purposes. (*Id.* at 26-27).

On December 17, 2013, Plaintiff appealed the ALJ's decision to the Social Security Appeals Council, and also submitted additional medical evidence. (A.R. 12, 620-711). On February 26, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's November 20, 2013, decision denying Plaintiff benefits the final decision of the Commissioner. (*Id.* at 7-11). On April 11, 2015, having exhausted her administrative remedies, Plaintiff timely filed a Complaint asserting that the ALJ's decision was not in accordance with the law and was contrary to the evidence. (R. 2).

Plaintiff has filed a Motion for Summary Judgment, arguing that the ALJ erred by: failing to include any physical limitations in the RFC despite his finding that her back condition was a severe impairment; relying on a vocational expert's response to an inaccurate hypothetical question; improperly evaluating Plaintiff's credibility; and issuing a decision not supported by substantial evidence. (R. 12, at 2-15). Each of these arguments is discussed below.

### III. ANALYSIS

#### A. The Court cannot consider evidence first submitted to the Appeals Council

In making her arguments, Plaintiff relies in part on medical records that were provided to the Appeals Council but were not contained in the record before the ALJ. (R. 12-1, at 7-12). The Sixth

6

Circuit has held that "where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993)). This Court is limited to reviewing the record before the ALJ unless the claimant can show, pursuant to sentence six of § 405(g), that the evidence is new, material, and there is good cause for her failure to incorporate it into the record at an earlier stage. 42 U.S.C. § 405(g); *see also Cotton*, 2 F.3d at 695-96.

Here, Plaintiff has not requested a sentence six remand. (R. 12-1). Even if the arguments in Plaintiff's Motion are construed as raising a "sentence six" remand issue, she has not articulated any argument demonstrating good cause for not having submitted this evidence for the ALJ's consideration. *See Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014) (denying sentence six remand upon finding no showing of good cause for failing to submit medical notes dated a month or more before the ALJ's decision for consideration by the ALJ); *Dunn v. Astrue*, No. 5:10-cv-312-DCR, 2011 WL 1630287, at *3 (E.D. Ky. Apr. 29, 2011) (declining to consider sentence six remand where claimant did not request it and did not attempt to articulate an argument that requirements for remand were met); *Washam v. Astrue*, No. 6:08-cv-07-JMH, 2009 WL 864743, at *4 (E.D. Ky. Mar. 30, 2009) (sentence six remand not warranted where claimant made no attempt to show good cause for failing to provide the ALJ with a report dated 15 days before the ALJ's decision). Therefore, the Court will not recommend a sentence six remand, and it cannot consider this additional evidence in determining whether to uphold, modify, or reverse the ALJ's decision under sentence four of 42 U.S.C. § 405(g). *Cline*, 96 F.3d at 148 (citing *Cotton*, 2 F.3d at 695-96).

### B.  The ALJ did not err in his RFC determination

Plaintiff argues that the ALJ erred by not including any physical limitations in the RFC despite his finding, at step two, that her back condition is a severe impairment.[3] (R. 12-1, at 9-11). Plaintiff appears to be arguing that a finding of a severe impairment at step two necessitates at step four that some finding of limitation(s) stemming from that impairment must be incorporated into the RFC.

However, Plaintiff's argument fails to recognize that there are significant differences in the analysis required of the ALJ at these two steps. The step two severity determination is "a de minimis hurdle," requiring only that Plaintiff prove her impairment more than minimally impacts her ability to perform work-related functions. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). "Thus, an individual can have a severe impairment, i.e., one that more than minimally affects work ability, and still retain the RFC to do a wide variety of work." *Simpson v. Comm'r of Soc. Sec.*, No. 1:13-cv-640, 2014 WL 3845951, at *9 (S.D. Ohio Aug. 5, 2014); *see also Williams v. Colvin*, No. 14-06-GFVT, 2015 WL 5602418, at *6 (E.D. Ky. Sept. 22, 2015) ("the identification of an impairment as 'severe' at Step Two is not determinative of the ALJ's RFC determination (unless the impairments meets or medially equals the severity of a Listing)"); *West v. Colvin*, No. 5:14-69-KKC, 2014 WL 7177925, at *4 (E.D. Ky. Dec. 16, 2014) ("The ALJ is not required to incorporate all 'severe impairments' in her RFC assessment.") (citing *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007)). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth*, 217 F. App'x at 429 (quoting *Yang*

---

[3]Plaintiff focuses her arguments on her physical impairments and does not argue that the ALJ erred in his determination of her mental impairments. Thus, the Court will not further discuss the record or opinion evidence as to her mental impairments.

8

*v. Comm'r of Soc. Sec.*, No. 00–10446–BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004)). "Put another way, the existence of a severe impairment says nothing as to its limiting effects." *Simpson*, 2014 WL 3845951, at *9 (citing *Higgs*, 880 F.2d at 863). Instead, the limiting effects are determined at step four.

At step four, the ALJ must determine a plaintiff's RFC, defined in the regulations as "the most [a plaintiff] can still do despite [her] limitations." *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is the ALJ's responsibility to make the RFC determination, and in doing so, the ALJ must consider both severe and nonsevere impairments. 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2). However, it remains the plaintiff's burden to prove her functional limitations. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). Accordingly, because an ALJ's analysis in determining the severity of impairment at step two and the functional limitations resulting therefrom at step four are significantly different, a finding that a plaintiff has a severe impairment does not automatically translate into a finding that the impairment has a corresponding functional limitation. *See Williams*, 2015 WL 5602418, at *6; *Simpson*, 2014 WL 3845951, at *9. Thus, to the extent Plaintiff is arguing that the ALJ's finding that her back condition constitutes a severe impairment requires a finding of functional limitations resulting therefrom, her argument is without merit.

Further, the ALJ's decision demonstrates that he considered Plaintiff's back impairment in rendering the RFC. Specifically, the ALJ explained:

> In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)–i.e., an impairment(s) that can be shown by medically acceptable clinical laboratory diagnostic techniques–that could reasonably be expected to produce the claimant's pain or other symptoms. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to

9

> produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. While the record contains x-ray and CT evidence of degenerative disc disease including disc bulging and osteophyte formation at L5/S1, these studies do not reveal any frank disc herniations or significant spinal canal involvement/stenosis. The tenor of treating source records suggest that symptoms are intermittent and of a mild to moderate severity based on pain scale ratings by the claimant and her response to medications generally prescribed for this level of discomfort. Ms. Gosnell's treatment has all been conservative in nature with no referrals for surgery or other aggressive measures. All of her clinical and diagnostic examinations have been relatively unremarkable with no documentation of any musculoskeletal abnormality which could reasonably be expected to result in the degree of pain alleged. This includes the left knee MRI performed on December 6, 2013, showing intact meniscus with suspicion of anterior cruciate ligament thinning/irregular in appearance, yet, no additional studies or treatments followed and Ms. Gosnell was not treated with an orthopedic device or limited as to ambulation or weight bearing (Exhibit 23F/5). Further, despite the intensity of pain complaints, the claimant does not currently participate in physical therapy or other such modalities. The claimant does not require the use of an ambulatory aid, back/knee brace, or pain control device. The claimant's pain has been managed through the use of oral analgesics only. The claimant has no history of pain management treatment/other modalities such as epidural steroid injections. Further, Ms. Gosnell has not required undue emergency care for pain complaints. Based on the foregoing, I conclude that the claimant does not experience pain/discomfort or other symptoms of the severity, frequency, or duration necessary to preclude the performance of work activity within the parameters outlined herein.

(A.R. at 24-25). The ALJ also noted the record does not contain any treating source opinion regarding residual function; nor is there commentary suggesting Plaintiff is unable to carry out simple work. (*Id*. at 26).

This discussion evidences that the ALJ considered Plaintiff's back impairment in reaching the RFC, including the medical evidence of record. In addition, the ALJ noted he gave substantial weight to the opinions of the state agency consultants, citing, among others, Exhibit 12F, which is the RFC assessment of Dr. Lange. (A.R. 420-27). Dr. Lange reviewed the medical evidence of record and found Plaintiff has no exertional limitations. (*Id*. at 421). Thus, the fact that the ALJ did not incorporate any further limitations into the RFC for Plaintiff's back impairment does not render the RFC not supported by substantial evidence. As discussed above, the mere finding of a severe impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual. *See Simpson*, 2014 WL 3845951, at *9.

Lastly, Plaintiff also appears to argue that the ALJ selectively included only portions of the pertinent evidence, citing *Howard v. Commissioner of Social Security*, 276 F.3d 235, 240 (6th Cir. 2002) and *Webb v. Commissioner of Social Security*, 368 F.3d 629 (6th Cir. 2004). However, in *Howard*, the court found the ALJ took select phrases from an intake report that cast the claimant in a capable light while excluding other portions of the same report that showed he was less than capable, suggesting the ALJ did not consider the entire report in formulating the RFC. *Howard*, 276 F.3d at 240-41. Further, in *Webb*, the court explained its holding in *Howard* requires an ALJ to consider the entirety of a claimant's medical record in calculating her RFC. *Webb*, 368 F.3d at 632. Here, Plaintiff has not pointed to any particular evidence that was before the ALJ at the time of his decision that she alleges the ALJ either failed to consider or from which he inaccurately extracted

11

his findings.[4] The ALJ's RFC analysis demonstrates that he considered the medical records before him and his RFC determination is supported by substantial evidence.

### C. The ALJ did not err in his questioning of the vocational expert

Plaintiff argues that the ALJ erred in relying on the vocational expert's response to an inaccurate hypothetical question because it did not include physical limitations. Plaintiff states the ALJ ignored objective medical evidence establishing that she has physical impairments that impact her ability to do work. Specifically, Plaintiff argues that the ALJ erred in not including any physical limitations caused by her back, knee, and hip pain, and her gastrointestinal impairments.

The regulations permit, but do not require, an ALJ to use the services of a vocational expert at step four to determine whether a claimant, given her RFC, can do her past relevant work. 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). When the ALJ obtains vocational evidence through the testimony of a VE, the hypothetical questions posed to the VE must accurately portray the claimant's physical and mental limitations. *See Webb*, 368 F.3d at 632; *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). It is well established, however, that a hypothetical question need only include those limitations that the ALJ finds credible. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Scott v. Comm'r of Soc. Sec.*, No. 1:14-cv-497, 2015 WL 4247168, at *4 (W.D. Mich. July 13, 2015) (hypothetical posed to VE for step 4 determination needed only to include limitations ALJ identified in plaintiff's RFC).

Here, the hypothetical question that the ALJ posed to the VE was consistent with the ALJ's RFC determination that Plaintiff was able to perform at all exertional levels with specific limitations

---

[4]As discussed in Section A above, Plaintiff references several medical records that were not before the ALJ at the time of his decision, and therefore cannot be considered by the Court.

for her psychological impairments as well as a limitation due to her history of seizures precluding climbing ladders, ropes or scaffolds and avoiding exposure to hazards. (A.R. 737-38). While Plaintiff cites to medical records that evidence she has back, knee, and hip pain and gastrointestinal issues, she has not cited to any record demonstrating functional limitations from these impairments.[5] Nor has Plaintiff articulated what additional functional limitations the ALJ should have included to render the hypothetical accurate. Instead, Plaintiff argues that despite the medical evidence supporting physical impairments, the ALJ did not include any physical limitations except those relating to her seizure disorder. However, as explained above, a finding that Plaintiff suffers from a severe impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual. *See Simpson*, 2014 WL 3845951, at *9.

Here, the ALJ considered the record evidence, Plaintiff's testimony, and the opinions of the consulting physicians, and rendered an RFC assessment that included all of the limitations that he found credible. The record reflects that the ALJ's hypothetical question posed to the VE was consistent with those limitations set forth in the RFC determination. Moreover, while the hypothetical did not impose any exertional limitations, finding she could perform a full range of work at all exertional levels, the ALJ asked the VE whether jobs existed at the medium level, light level and sedentary level. The VE responded that given such an individual, jobs did exist at each of those levels that such a person could perform. Therefore, the VE's opinion constitutes substantial evidence that supports the ALJ's finding in step five of the disability analysis. *See Wilson*, 378 F.3d at 549 ("This court has held repeatedly that the testimony of a vocational expert identifying specific

---

[5]Again, the Court notes Plaintiff cites to records not before the ALJ at the time of his decision. (*See* A.R. 660, 703).

jobs available in the regional economy that an individual with the claimant's limitation could perform can constitute substantial evidence supporting an ALJ's finding at step 5 that the claimant can perform other work.").

### D. The ALJ did not err in his credibility determination

Plaintiff argues that the ALJ erred in finding her statements regarding the intensity, persistence, and limiting effects of her symptoms not fully credible. (R. 12-1, at 13-14). Plaintiff does not dispute the accuracy of the findings. Instead, she appears to argue that the ALJ relied too heavily on her activities of daily living, stating she "does what she has to do to get through the day, taking care of herself and her children. She does what she can in her own time." (*Id.* at 14). Plaintiff argues her ability to "juggle" her activities of daily living does not equate with an ability to perform a job. (*Id.*).

It is well established that a plaintiff's subjective complaints of pain can support a disability finding if the record contains "objective medical evidence" of a severe medical condition that "can reasonably be expected to produce the alleged disabling pain." *Steagall v. Comm'r of Soc. Sec.,* 596 F. App'x 377, 381 (6th Cir. 2015) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994)). "Even when the record contains this evidence, however, the ALJ may also consider the credibility of the claimant's subjective complaints." *Id.* (citing *Jones*, 336 F.3d at 475-76). An ALJ may discount a claimant's credibility when the ALJ "finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.* (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004)). The ALJ's credibility determinations-when supported by substantial evidence-are entitled to "great weight." *Id.* (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)).

Here, the ALJ found the record contains objective medical evidence of the existence of impairments that could reasonably be expected to produce the Plaintiff's pain and other symptoms, but found her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. (A.R. at 24). The ALJ noted that he considered several factors in assessing the claimant's credibility, including her daily activities, the nature of her symptoms, the effectiveness of her medications, her conservative treatment and the measures taken to relieve the symptoms. (A.R. 25-26). In making his credibility assessment, the ALJ discussed his finding that Plaintiff's daily activities limited her credibility, stating:

> Ms. Gosnell left her last job in 2007 in order to relocate with a boyfriend rather than from a mental or physical incapacitation to continue working. She alleges disability beginning August 2009. On multiple occasions, the claimant reported being the primary caregiver to three children despite allegedly overwhelming anxiety and in relation to her isolation from others, this appears to be self-imposed inasmuch as she told a treating source in May 2013 that she stayed at home with children all day with little adult interaction. Finally, the claimant's level of daily and social functioning is not reflective of a totally disabled individual. She testified at the hearing that she performs a wide range of household chores and engages in pleasurable activities including playing games on the computer and using Facebook.

(A.R. 25-26). The ALJ further discussed Plaintiff's activities of daily living in his analysis of the 12.00 Listings, including that Plaintiff reported preparing meals, cleaning the house, doing the laundry, performing self care, caring for her children, and driving occasionally. (*Id*. at 24).

The ALJ also considered the consistency of Plaintiff's complaints with the medical evidence, including that treating source records indicated Plaintiff's symptoms were intermittent and of a mild to moderate severity based on her pain scale ratings. (*Id*.). The ALJ further noted her symptoms had been managed conservatively, she had relatively unremarkable clinical and diagnostic examinations, and she does not currently participate in physical therapy or require other pain management

15

treatment. Instead, he noted Plaintiff's pain has been managed through the use of oral analgesics. (*Id.*).

The ALJ also considered the third-party questionnaire of Plaintiff's husband. With respect to the third-party questionnaire, the ALJ stated:

> In a third party questionnaire dated July 9, 2012, the claimant's spouse reported that the claimant has some sleep interruption, requires some reminders, does not like crowds, and cannot concentrate on numbers very well. He stated further that she has no interest in doing things and from a social aspect sometimes thinks people are talking about her and does not want to do anything outside the house. He alleged that she can only walk up to 10 minutes and can lift a maximum of 5 pounds. I give little weight to these assertions as lacking supporting evidence in the record. Ms. Gosnell may require reminders on occasion, but there is nothing in the evidence to even suggest that her ability for recall and/or memory is diminished. According to the consultant mental examiners, testing results revealed an adequate to even better ability in this area. Further, his report regarding walking and lifting limits does not correlate with the fact that she performs such a wide range of household chores nor with the fact that she apparently is able to lift and hold greater than 5 pounds on a regular basis being that she has "two toddlers" for whom she does everything. Although the claimant may not fully enjoy going out, she and Mr. Gosnell both reported that she goes out 2-3 times on a weekly basis and goes grocery shopping 2-3 times a month for 45 minutes at a time.

(A.R. 26). The ALJ also noted the lack of any opinion evidence that would suggest Plaintiff is unable to perform simple work.

Thus, the ALJ looked at the record as a whole, including the medical record, the opinion evidence, Plaintiff's testimony and her husband's answers to a third-party questionnaire and found the evidence did not support Plaintiff's claim that her symptoms were of such intensity, persistence and effect to be disabling. *See Steagall*, 596 F. App'x at 381 ("An ALJ may discount a claimant's credibility when the ALJ 'finds contradictions among the medical reports, claimant's testimony, and other evidence.'") (quoting *Warner*, 375 F.3d at 392). "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant

16

and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). Here, the ALJ's conclusion regarding Plaintiff's credibility is supported by substantial evidence and therefore entitled to deference. *Steagall,* 596 F. App'x at 381.

### E. ALJ's decision is supported by substantial evidence

Plaintiff's final argument is that the ALJs "determination that the Plaintiff is not disabled is not supported by substantial evidence." (R. 12-1, at 14). In this section of her Motion, Plaintiff fails to identify any particular finding or conclusion that she seeks to challenge, aside from the challenges discussed above. Instead, she recites the legal definition for "substantial evidence" and the requirement that the entirety of the record be considered, and argues the record demonstrates she can not perform even sedentary work on a regular and sustained basis. The Court has already addressed Plaintiff's argument that the ALJ did not properly determine Plaintiff's RFC, and finds Plaintiff has not adequately developed any additional arguments in this last section of her Motion. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) (declining to formulate arguments on claimant's behalf or undertake an open-ended review of record, but limiting review to arguments raised). Thus, while the argument in this section warrants no additional discussion, the Court notes that its review of the evidence before the ALJ demonstrates the decision is, in fact, supported by substantial evidence. *See Buxton*, 246 F.3d at 772 ("[F]indings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.").

### IV. CONCLUSION AND RECOMMENDATION

As explained above, Plaintiff's arguments lack merit and the ALJ's decision is supported by substantial evidence. Accordingly, **IT IS RECOMMENDED** that:

1. The Commissioner's decision be found to be supported by substantial evidence and therefore **affirmed**;

2. Plaintiff's Motion for Summary Judgment (R. 12) be **denied**;

3. Defendant's Motion for Summary Judgment (R. 14) be **granted**; and,

4. Judgment be entered and this matter be **stricken** from the active docket of the Court.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived. 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

Signed this 22nd day of February, 2016.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

J:\DATA\social security\15-67 Gosnell R&R-final.wpd